UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION
CIVIL ACTION NO.: 04-30-36-KPN

| | |
|---|---|
| Frank Labuz and Harriet Labuz, )<br>Plaintiffs )<br>v. )<br>)<br>Cascades Diamond Inc., )<br>Defendant ) | COMPLAINT |

## I. JURISDICTION

1. The action is brought by Frank Labuz and Harriet Labuz against Cascades Diamond Inc., for legal and equitable relief arising from the defendants wrongful termination of the plaintiffs Health Insurance and life insurance benefits in violation of the Employee's Retirement Income Security Act 29 U.S.C. Section 1000 et. seq. To the extent plaintiffs' claim do not "relate to" an. ERISA Plan, the Plaintiffs also seek arising from the defendant's breach of contract and/or negligent misrepresentation.

2. Jurisdiction of this court over the plaintiffs' claim is proper pursuant to 29 U.S.C. § 1331 and 28 U.S.C. 1343(a)(4). The plaintiffs also request that the court exercise jurisdiction over the plaintiffs' pendant common law claims.

## II. PARTIES

3. The plaintiff, Frank Labuz, is a citizen of the United States, a resident of Palmer, Hampden County, Massachusetts, and a former employee of the defendant. At all times relevant to this action, the plaintiff was a "participant" in the defendant's employee benefit plan as defined by 29 U.S.C. Section 1002(7).

4. The plaintiff, Harriet Labuz, is a citizen of the United States, a resident of Palmer, Hampden County, Massachusetts, and is also a beneficiary of a welfare benefit plan sponsored by the defendant. At all times relevant to this action, the plaintiff was a "participant" in the defendant's employee benefit pan as defined by 29 U.S.C. Section 1002(7).

5. At all relevant times, the defendant, Cascades Diamond Inc., was Massachusetts corporation with a place of business in Thorndike, Massachusetts.

6. At all relevant times, the defendant was an employer engaged in an industry or activity

affecting commerce within the meaning of 29 U.S.C. Section 1002(5)and (12).

7. The Defendant is both the "plan sponsor," 29 U.S.C. 1002 (16)(A), and the "plan administrator,"29 U.S.C. 1002 (16)(B), of a welfare benefit plan within the meaning of 29 U.S.C. Section 1002(3) and 29 U.S.C. Section 1140.

8. At all relevant times, the defendant has maintained various employment benefits plans, including a comprehensive health insurance plan and life insurance plan for all permanent full-time employees with benefits continuing for employees who retire under defendant's retirement plan.

### III. FACTS

9. On or about September of 1994, the plaintiff, Frank Labuz, was notified by Thomas Reed, the defendant's Human Resources Manager, that his position with the company was being eliminated and that he would be retired effective on or about November 30, 1994. Mr. Labuz was 70 years of age at the time.

10. During this meeting, Mr. Reed gave the plaintiff a letter dated September 13, 1994 which stated:

    "The following benefits will continue under your retirement status:

    Your wife Harriet, will be placed on an individual medical plan until she turns 65 years of age. You will be placed on a supplemental medical insurance plan to help off set what medicare doesn't pay for and that plan will be paid for by the company. Also your life insurance will continue."

11. After reviewing this letter with his wife, Harriet Labuz later that evening, Mr. Labuz returned to his employer concerned that letter did not ensure supplemental health insurance coverage for his wife after she attained sixty-five years of age.

12. The following day, the plaintiff again met with Mr. Thomas Reed and conveyed his concerns regarding supplemental health insurance coverage for Harriet Labuz Mr. Reed assured Mr. Labuz that Mrs. Labuz would be covered under a supplemental insurance plan when she reached sixty-five years of age. Mr. Reed acknowledged this fact in writing at the bottom of Mr. Labuz' September 13, 1994 letter.

13. Once again Mr. Reed signed his name to the bottom of the September 13, 1994 letter.

14. On or about September 26, 1994, the plaintiff received another letter from Lance Gauthier, the defendant's benefits coordinator. In this letter the defendant assured Mr. Labuz that there would be no cost for his supplemental health insurance if he selected "the Bankers life plan." The letter also stated: "Your wife, Harriet, will remain on Blue Cross Blue Shield HMO Blue but as an individual. After discussions with Tom Reed, Harriet's contribution for medical coverage will only be $50.00 per month."

15. The plaintiff, Frank Labuz, selected Banker Life Plan" as his Supplemental insurance carrier.

16. The Plaintiff, Harriet Labuz, selected the "Kaiser Plan 1" as her primary health insurance carrier. She was required to pay a monthly premium of $27.97.

17. On October 1, 1996, Harriet Labuz received a notice from the defendant that her contribution to the health insurance premiums would increase to $69.93 per month. Harriet Labuz immediately protested the increase in her premiums to Lance Gauthier. Mrs. Labuz questioned why her premiums were being increased since other retirees and their spouses on the same plan were not incurring a corresponding increase in premiums. During her discussion with Mr. Gauthier, their conversation turned heated. The defendant eventually agreed to offer Mrs. Labuz the lower premium contribution rate.

18. On or about October 17, 1997 the plaintiff, Harriet Labuz was notified by the defendant that she would no longer be offered medical benefits effective December 1, 1997. The defendant also included a COBRA notice advising Mrs. Labuz that she could continue her health insurance coverage for 18 months provided she bore the full cost of the insurance. At the time this notice was received Mrs. Labuz, she had not reached sixty-five years of age.

19. On or about October 17, 1999, the Plaintiff, Frank Labuz received a notice from the defendant that he would now be charged a premium for continued supplemental health insurance coverage under the Bankers Life plan.

20. On May 24, 1999, the plaintiffs filed suit in Federal District Court, Docket #99-30103 alleging violations of ERISA as well as breach of contract and misrepresentation.

21. On or about January 5, 2000, the parties executed a Settlement Agreement and General Release"(hereinafter "settlement agreement"). A true and accurate copy of which is attached hereto as exhibit "A" of this Complaint.

22. Under paragraph 2a of the parties settlement agreement, the defendant agreed "to continue to offer Frank Labuz supplemental health insurance coverage **at no cost to him for his lifetime.**"(emphasis added).

23. The settlement agreement further stated at paragraph 2b that the defendant would continue to offer the plaintiff Harriet Labuz "supplemental health insurance coverage for her lifetime..."(emphasis added).

24. Pursuant to this settlement agreement, the plaintiffs dismissed there claims in Federal district court and the defendants reinstated life insurance and health insurance coverage for the Frank Labuz and health insurance for Harriet Labuz.

25. On August 1, 2003, Frank Labuz received a letter from Mario Lacharite, a representative of Cascades Diamond, Inc., indicating that effective the end of November, 2003, the plaintiffs health insurance and life insurance benefits would terminate. A true an accurate copy of this letter is attached hereto as exhibit "B".

26. On September 11, 2003, Counsel for the plaintiffs forwarded a letter to Jennifer Moore, Human Resource Manager for Cascades Diamond, Inc., contesting the notice of termination of benefits. A copy of that letter is attached hereto as exhibit "C".

27. On October 10, 2003, Plaintiffs' counsel received a letter from attorney Melissa M. Shea indicating that she represented the defendant and also reaffirming the defendant's notice that the plaintiffs health insurance and life insurance benefits would be terminated. A true and accurate copy of that letter is attached hereto as Exhibit "D".

28. Through their attorney, both plaintiffs protested the termination of their health insurance and life insurance benefits and requested administrative review of the same. Their request for reconsideration was denied by the defendant and therefore the plaintiffs have exhausted their administrative remedies.

29. By the acts described herein the defendant waived its right to modify the terms of the welfare benefit plan offered to the plaintiffs.

30. By these acts, the defendant waived its right to terminate the welfare benefit plan offered to the plaintiffs.

## COUNT I
## WRONGFUL TERMINATION OF VESTED WELFARE BENEFITS UNDER THE EMPLOYEE INCOME SECURITY ACT (ERISA), 29 U.S.C. §1132 (a)(1)(B).

31. By the acts described herein the defendant has violated 29 U.S.C. §1132, by terminating their vested welfare benefits.

## COUNT II
## BREACH OF FIDUCIARY IN VIOLATION OF THE EMPLOYEE INCOME SECURITY ACT (ERISA), 29 U.S.C. §1132 (a)(3).

32. By the acts described herein, the plaintiffs further contend that the defendant's decision to terminated the plaintiffs benefits constituted a violation of the terms of the plan or in the alternative misrepresented that the plaintiffs Health insurance and life insurance benefits would, without qualification, continue for life. As such the defendants affirmatively misrepresented the material terms of the welfare benefit plan and interfered with the plaintiffs vested benefits under the welfare benefit plan.

## COUNT III
## BREACH OF CONTRACT

33. By the acts described herein, and in the event the court determines that the settlement agreement was not "related to" a welfare benefit plan, the plaintiffs allege that the defendant's breached the settlement agreement by terminating health insurance and life insurance benefits prior to their death.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

34. By the acts described herein, and in the event the court determines that the settlement agreement was not "related to" a welfare benefit plan, the defendant's written representation that the plaintiff, Frank Labuz would be entitled to free supplemental health insurance and life insurance coverage for his as well as the defendant's assurances that Harriet Labuz would be covered under an employer sponsored supplemental health insurance plan after reaching the age of 65 and thereafter for her life was false information which the defendant knew or should have known was false. The plaintiffs relied on defendant's misrepresentations to their detriment.

35. As a result of the defendant's negligent misrepresentations, the plaintiffs have suffered consequential damages and mental and emotional pain and suffering for which they seek relief.

## PLAINTIFFS REQUEST TRIAL BY JURY

*WHEREFORE* the plaintiffs request that this court exercise jurisdiction over their claims and award:
1. Full legal and equitable relief under ERISA including but not limited to reinstatement of plaintiffs lost employee benefits;
2. Compensatory and punitive damages;
3. Attorney fees, costs and interest; and
4. Such other and further relief as the court may deem just and appropriate.

THE PLAINTIFFS
FRANK AND HARRIET LABUZ
By their Attorney,

by: _____
John D. Connor, Esq.
BBO# 629185
101 State Street, Suite 501
Springfield, MA 01103
(413)-827-0777

February 19, 2004