UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FRANK LABUZ and HARRIET LABUZ,  )
        Plaintiffs,  )
v.  )  CIVIL ACTION NO. 04-30036-KPN
CASCADES DIAMOND, INC.,  )
        Defendant.  )

## DEFENDANT'S, CASCADE DIAMOND INC.'S, MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Now comes the Defendant, Cascades Diamond, Inc. (hereinafter "Company") and hereby submits this memorandum of law in support of its Motion to Dismiss Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### I. FACTUAL BACKGROUND

The parties in the above captioned case entered into a Settlement Agreement and General Release (hereinafter "Settlement Agreement") in January, 2000 as a result of a previous lawsuit filed by the Plaintiffs against the Company alleging claims similar to the ones filed in this case. See *Frank Labuz, et al v. Cascades Diamond, Inc.* Civil Action No. 99-30103-KPN (D. Mass., Neiman, U.S.M.J.). Both parties were represented by counsel. The terms of the Settlement Agreement included inter alia, that the Plaintiffs release the Company of all claims. See,

<u>Settlement Agreement</u> ¶ 1.a. (Exhibit A to the Complaint).  The Plaintiffs also withdrew, with prejudice, the action against the Company.  The Plaintiffs agreed that they would not, among other things, institute or file any lawsuits or complaints, known or unknown, under any federal or state laws including but not limited to:

> the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. . . . contract or tort laws, or any claims arising under common law, such as claims for malicious prosecution, misrepresentation, defamation . . . or any other action or grievance against Cascades based upon any conduct up to and including the date of this Agreement and shall not, from any source or proceeding, seek, accept or be entitled to any additional damages, award, or settlement therefrom.

See, <u>Settlement Agreement</u> ¶ 1.c.  As consideration for these promises the Company agreed that it would:

a. "pay to Frank Labuz the gross sum of $2,880.34 to reimburse him for past health insurance premium payments he made since his retirement . . . [and] to continue to offer Frank Labuz supplemental health insurance coverage at no cost to him for his lifetime."  See, <u>Settlement Agreement</u> ¶ 2.a.

b. "pay Harriet Labuz the gross sum of $2,816.37 to reimburse her for past health insurance premium payments she has made since December 1997 . . . continue to offer Harriet Labuz health insurance coverage at no cost to her until she attains the age of 65 . . . [and that after 65 Cascades would] offer to provide her with supplemental health insurance coverage for her lifetime, *<u>provided</u> that her contribution to monthly premiums toward such supplemental health insurance coverage shall be equivalent to the*

> *contributions required of other individuals, similarly situated, who are at the time covered by Cascades supplemental health insurance coverage.*" See, Settlement Agreement ¶ 2.b. (emphasis supplied).

c. *"[b]oth Harriet and Frank Labuz will be accorded the same choice of specific health insurance plans that are offered to all other Cascades retirees and persons similarly situated."* See, Settlement Agreement ¶ 2.c. (emphasis supplied).

On or about August 1, 2003, the Company sent a letter to its employees and retirees, including the Plaintiffs, informing them that the Company would cease operations on August 30, 2003. Complaint, Exh. B, ¶ 1. The August 1st letter also informed these individuals about the effect that the closure would have on any health and/or life insurance benefits that they received through the Company. *Id.* Specifically, this letter informed all employees and all retirees that said insurance benefits would terminate after a certain date.

After receipt of the August 1st letter, Plaintiffs' counsel wrote the Company indicating that the Plaintiffs were entitled to lifetime benefits pursuant to the Settlement Agreement. See, Complaint Exh. C. The Company, through its attorneys responded to Plaintiffs' counsel. See, Complaint Exh. D. The Company indicated that Plaintiffs' counsel omitted to include in his letter a significant provision of the Settlement Agreement, namely, numbered paragraph 2 c. which clearly indicates that "[b]oth Harriet and Frank Labuz will be accorded the same choice of specific health insurance plans that are offered to all other Cascades retirees and persons

similarly situated." This action was then instituted against the Company.

### III. LEGAL ANALYSIS AND ARGUMENT

#### A.    Legal Standard for a Motion to Dismiss

The Plaintiffs' Complaint fails to state a claim upon which relief may be granted. The purpose of a motion to dismiss "is to determine whether the complaint alleges facts sufficient to state a cause of action." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). The legal standard for judicially evaluating a motion to dismiss is well established in the First Circuit:

> A motion to dismiss pursuant to Rule 12(b)(6) challenges the adequacy of the claims in a complaint. The motion to dismiss is not an occasion to prove or disprove the facts in the Complaint. Rather, the Court assumes that all facts alleged in the Complaint are true and makes all reasonable inferences from those facts in Plaintiff's favor.

*Greenier v. Pace, Local No. 1188*, 201 F. Supp. 2d 172, 176 (D. Me. 2002) (citations omitted). In this case, even if the Court accepts the factual allegations in the Complaint as true and draws all reasonable inferences in Plaintiffs' favor, the Complaint must be dismissed.

#### B.    Failure to State a Viable Claim – Complaint Barred by Settlement Agreement

The Federal Rules of Civil Procedure authorize dismissal of a complaint when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b). The Complaint in this case is barred by a Settlement Agreement and General Release executed by the parties and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 1. *Contract Law Analysis*

As a contract, the Settlement Agreement is subject to contract interpretation. Under general contract interpretation rules, an agreement must be read as a whole. *Starr v. Fordham,* 420 Mass. 178, 190, 648 N.E.2d 1261 (1995). By mutual consent, the Settlement Agreement stipulates the choice of law provision is in accordance with the laws of the Commonwealth of Massachusetts. See, <u>Settlement Agreement ¶ 11</u>. Contract interpretation in Massachusetts presents, in the first instance, a question of law, and is therefore the court's responsibility. *See, e.g., Boston Edison Co. v. FERC,* 856 F.2d 361, 365 (1st Cir. 1988). Under Massachusetts law, a contract term is ambiguous only where its language is "reasonably prone to different interpretations or susceptible to differing, but nonetheless, plausible constructions." *Lanier Prof. Servs., Inc. v. Ricci,* 192 F.3d 1, 4 (1st Cir. 1999). In making the determination, the court considers the contract as a whole; its meaning "cannot be delineated by isolating words and interpreting them as though they stood alone." *Starr,* 420 Mass. at 190.

### 2. *The Negotiated Settlement Agreement*

Of particular relevance to this action is that the Plaintiffs agreed to the benefits which were specifically enumerated in numbered paragraph 2 of the Settlement Agreement.[1] Most important to this action was the third provision under numbered paragraph 2. wherein the Plaintiffs specifically agreed that *"[b]oth Harriet and Frank Labuz will be accorded the same*

---

[1] These benefits included: payment in the amounts indicated above for reimbursement of past health insurance premium payments; the continuation of supplemental health insurance coverage at no cost to Mr. Labuz for his lifetime; and continuation of Ms. Labuz's health insurance coverage until she attains the age of 65 and thereafter, supplemental health insurance for her lifetime with the proviso that "her contribution to monthly premiums toward such supplemental health insurance coverage shall be equivalent to the contributions required of other individuals, similarly situated, who are at the time covered by Cascades supplemental health insurance coverage." *See* Settlement Agreement ¶¶ 2.a & b.

*choice of specific health insurance plans that are offered to all other Cascades retirees and persons similarly situated."* See, Settlement Agreement ¶ 2.c. (emphasis added). During settlement discussions, the Plaintiffs were represented by counsel. The Plaintiffs were not singled out by the Company when it ceased operations a number of years later. In fact, other persons similarly situated were also sent the same letter regarding notice of the cessation of operations and the effect on benefits. In accordance with the terms of the Settlement Agreement, the Plaintiffs are being accorded "the same choice of specific health insurance plans that are offered to all other Cascades retirees and persons similarly situated." Although Plaintiffs' counsel conveniently left out Section 2.c. of the Settlement Agreement[2] Plaintiffs are, nonetheless, bound by the terms of the Settlement Agreement and are barred from filing the instant action against the Company. See, Settlement Agreement ¶ 2.c.

The language of the Settlement Agreement is not ambiguous and should be read as a whole instead of piecemeal as the Plaintiffs would have the Court do. In this particular case, the terms of the Settlement Agreement are unambiguous – the Company promised the Labuz's health benefits at the same level as similarly situated individuals and retirees. Because the Company ceased operations and similarly situated individuals and retirees ceased receiving benefits, it is consistent that the Plaintiffs stopped receiving benefits as well and the terms of the Settlement Agreement continue in effect. Nothing in the negotiated Settlement Agreement precluded the Company's action.

---

[2] Noticeably missing from Plaintiffs' counsel's August 1st letter to the Company was any reference to paragraph 2. c. of the Settlement Agreement. Again, in the "Facts" of the instant Complaint, numbered paragraphs 22 and 23 mention paragraphs 2.a. and 2.b. of the Settlement Agreement but omit any specific reference to paragraph 2.c. evincing a possible desire by the Plaintiffs to ignore material terms of the Settlement Agreement.

Moreover, there is no other consistent way to read the Settlement Agreement provisions that state the Labuz's will receive the same choice of benefits as similarly situated individuals and that they receive lifetime benefits. The Company's reading of the Settlement Agreement reconciles these two provisions allowing the Labuz's to receive lifetime benefits so long as retirees and similarly situated persons receive benefits as well. The Plaintiffs' reading, however, negates entirely the provision which states that they will receive the same benefits as similarly situated individuals and retirees. See, e.g. *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179 (1st Cir. 1995) ("Accepted canons of construction forbid the balkanization of contracts for interpretive purposes" ); see also *Restatement (Second) of Contracts* § 202 cmt. d (1981) (cited as authority by *Smart* and explaining that "[w]here the whole can be read to give significance to each part, that reading is preferred"). Therefore, when the phrase "lifetime benefits" is read in the full context of the document, the Settlement Agreement is subject to only one reasonable interpretation. The Settlement Agreement is not ambiguous at all and only grants the Labuz's lifetime benefits so long as other retirees and similarly situated persons receive benefits. The Settlement Agreement is clear on its face and the language of the Settlement Agreement makes clear that so long as the Labuz's are offered the same choice of health plans as other retirees and persons similarly situated that the Company has not breached the Settlement Agreement. The Plaintiffs received the benefit of the bargain they negotiated and the compromise to which they agreed.

The Settlement Agreement contains a "release of claims" (including "unknown claims") and an agreement not to sue. The Settlement Agreement thereby vitiates the Plaintiffs' right to sue the Company. In light of the Settlement Agreement which is part of the pleadings for the 12

(b)(6) Motion to Dismiss and the fact that the Settlement Agreement is unambiguous and released the Company from any and all claims, known or unknown, "arising from Harriet and Frank Labuz's receipt of health insurance or other benefits which resulted from Mr. Labuz' retirement from his employment with Cascades" See, <u>Settlement Agreement</u> ¶ 3, the Plaintiffs' Complaint fails to state a claim upon which relief can be granted and should be dismissed.

## IV. CONCLUSION

Since the Plaintiffs have failed to state a claim on which relief may be granted, the Company requests that this Honorable Court grant its motion to dismiss.

Respectfully Submitted,

THE DEFENDANT
Cascades Diamond, Inc.
By its attorneys,
Sullivan, Hayes & Quinn,

*Melissa M. Shea*
Melissa M. Shea, Esq.
BBO# 564693
SULLIVAN, HAYES & QUINN
One Monarch Place – Suite 1200
Springfield, MA 01144-1200
Tel: (413) 736-4538
Fax: (413) 731-8206

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the Defendant's Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Defendant's Cascades Diamond Inc.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) was served upon the attorney of record for each party by mailing a copy certified mail on April 28th, 2004 to:

John D. Connor, Esq.
Moriarty and Connor, LLC
101 State Street, Suite 501
Springfield, MA  01103

                                                                                Melissa M. Shea, Esq.