UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION
CIVIL ACTION NO.:04-30036-KPN



|  |  |
|---|---|
| **Frank Labuz and Harriet Labuz,**<br>       **Plaintiffs**<br>v.<br><br>**Cascades Diamond Inc.,**<br>       **Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT**

I   THE PLAINTIFFS REQUEST THAT THE PRESENT MOTION BE CONVERTED INTO A MOTION FOR SUMMARY JUDGEMENT AS THE COURT IS BEING ASKED TO CONSIDER MATTERS BEYOND THE PLEADINGS AND THERE ARE NO DISPUTED MATERIAL FACTS

The Federal Rules of Civil Procedure state, "[I]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief may be granted, matters outside the pleading are presented to, and not excluded by the Court, the motion shall be treated as one for summary judgement and disposed of as provided in Rule 56..." Fed. R. Civ. P. 12 (B) (6).The decision to convert a motion into one of summary judgement is within the sole discretion of the Court. <u>Aamot V. Kassel</u>, F 3d 441, 26 FR Serv 3d 387 (1993, CA6 Tenn.).

In the present case, this Court is being asked by both parties to determine the meaning of a written contract. Neither party disputes the existence of this contract nor do they contend that the contract does not encompass the complete understanding of the parties. Furthermore, the only defense asserted by the defendant in this action is based solely upon the defendant's interpretation of the parties' agreement. By relying upon the terms of the written contract for their respective positions, the parties are asking the court to consider matters outside the pleadings and to interpret the agreement between the parties. Therefore, the issue presented by this case a question of law and summary judgement is appropriate.<u> Robert Indus., Inc. v. Spence,</u> 362 Mass.

751, 754 (1973).

Accordingly, the plaintiffs ask that this court exercise its discretion and convert the present Motion to Dismiss into a Motion for Summary Judgement under rule 56 of the Federal Rules of Civil Procedure. The Plaintiffs further request that this court accept this memorandum and supporting documents as both the plaintiffs' Opposition to Defendant's Motion to Dismiss as well as the Plaintiff's Cross-Motion for Summary Judgement. The Plaintiffs' Rule 56.1 statement of material facts along with exhibits is attached hereto for the Court's reference.

## II   ARGUMENT

### A.   The Defendant Breached the Settlement Agreement Reached Between the Parties by Failing to Provide Health Insurance Coverage for the Plaintiff, Harriet Labuz and by Failing to Provide Health and Life Insurance Coverage at no cost to the Plaintiff, Frank Labuz.

The defendant brings its Motion to Dismiss in accordance with Fed.R.Civ. P. 12(b)(6) claiming that the plaintiffs have failed to state a claim for which relief may be granted. In support of its Motion, the defendant adopts two (2) general positions. First, that the Settlement Agreement (hereinafter referred to as "Agreement"), precludes the present suit by operation of the "general release" contained therein. Second, that the terms of the Agreement between the parties is "unambiguous" and further that paragraph 2(c) of the Agreement effectively relieves the defendant of its obligation to provide insurance benefits for the plaintiffs' "lifetime." Both arguments proffered by the defendant fail as a matter of law.

#### 1.   There Was No Waiver of the Present Cause of Action by the Plaintiffs for Breach of the Settlement Agreement.

The Agreement explicitly states that the general release contained therein is effective for any claims arising "up to an including the date of this agreement." See Exhibit A, paragraph 1(c). Thus the scope of the general release is limited to claims arising prior to the execution of the Agreement. While it is true that plaintiffs' previous civil action (see Labuz v. Casades Diamond, Inc., CA#:09-30103-KPN), was premised upon promises made by the defendant to provide

lifetime coverage, the present suit is based exclusively upon obligations which arise under the written Settlement Agreement reached in that case. As such, the plaintiffs current suit concerns conduct which occurred after the execution of the Agreement and therefore such rights could not have been waived by the general release.

Furthermore, the Agreement specifically contemplates litigation regarding application and interpretation of its terms. Paragraph 1(e) of the settlement agreement provides:

> Should the plaintiff successfully assert a claiming Court that the defendant has breached any promise to the Plaintiffs contained in this agreement then the plaintiffs shall be entitled to an award of their reasonable costs and attorneys' incurred in pursuing a remedy for the breach." Exhibit G at Paragraph 1(e).

If, as the defendant argues, the intent of the general release was to waive claims arising out of the administration of rights and obligations under the Agreement, the subsequent language apportioning attorney's fees and costs based on claims arising out of the Agreement would be rendered superfluous. Such and interpretation defies common sense as well as general contract interpretation principles. "Not only must due weight be accorded to the immediate context, but no part of the contract is to be disregarded." Boston Elevated Ry. v. Metropolitan Transit Auth., 323 Mass. 562, 569, 83 N.E.2d 445 (1949).at n11. Consequently, the terms of the Agreement may not be reasonably be regarded as constituting a waiver of the plaintiffs present claims.

### 2. Paragraph 2(c) does not relieve the defendant from its contractual obligation to provide "lifetime" insurance coverage to the plaintiffs.

According to the Restatement(Second) of Contracts at §§ 212: "any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and the relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties." Restatement (Second) of Contracts, §§ 212 comment b. Thus, if there is some measure of ambiguity regarding a term or terms of a contract, then the Court may consider the express understandings of the parties as well as extrinsic evidence such as the negotiations leading up to the Agreement and the general context in which the Agreement arose, in order to discern the

intent of the parties. Merrimack Valley Nat. Bank v. Baird, 372 Mass. 721, 723-24, 363 N.E.2d 688 (1977).[1]

Paragraph 2(c) states that the plaintiffs will have the same "choice of specific health insurance plans as other Cascades retirees and persons similarly situated." The defendant argues, in rather tortured fashion, that because it has terminated insurance coverage for its employees and retirees, there is no longer a "choice of specific health insurance plans" to offer the plaintiffs. According to the defendant, the plaintiffs get the same choice of plans as other "similarly situated" persons get, which is nothing.

The defendant fails to recognize that paragraph 2(c), by its plain terms, is intended only to regulate the quality insurance coverage which must be provided to the plaintiffs for their lifetime. It was never intended nor may it reasonably be interpreted as modifying the defendant's primary obligation to provide lifetime insurance coverage.

The context of the previous litigation as well as the process of negotiation support this plain reading of the Agreement. Indeed, the defendant ignores what it knows was the actual intent of the parties with respect to paragraph 2(c).

As noted in the previous litigation and in the present suit, the defendant notified Harriet Labuz in 1996 that her premium contributions would increase substantially while premium contributions for other retirees on the same plan remained constant. The plaintiffs vigorously protested this disparate treatment and the defendant eventually agreed to return premiums contributions to levels consistent with other retirees. The defendant also attempted to terminate their insurance coverage while continuing to offer coverage to all other retirees. Naturally, the plaintiffs regarded the defendant's conduct as arbitrary and for this reason, they insisted that the Agreement include language protecting them against such arbitrary treatment in administering the settlement agreement. Thus the context in which paragraph 2(c) arose had nothing to do with qualifying the defendant's obligation to provide lifetime insurance coverage but rather to assure the plaintiffs that they would be provided quality insurance coverage.

This obvious intent of Paragraph 2(c) is also born out by the correspondence occurring between attorney Connor and attorney Quinn leading up to the Settlement Agreement. Exhibit E is a letter from attorney Connor to attorney Quinn memorializing their verbal conversation. In that document, attorney Connor insists that the Settlement Agreement provide that "both Harriet

---

[1] As noted by the defendant, the Settlement Agreement employs Massachusetts Law as its Choice of Law. See Exhibit A, Paragraph 11.

Case 3:04-cv-30036-KPN    Document 8    Filed 05/21/2004    Page 5 of 6


and Frank Labuz will be entitled to select (sic) their preferred health insurance plan in the same manner as all other retirees and other persons similarly situated." Attorney Connor asked Attorney Quinn to confirm his understanding of this term as well as others in writing. Attorney Quinn later confirmed in writing that this term was an essential element of the Settlement Agreement. He also promised to draft the Settlement Agreement. See Exhibit F. Because it was at the plaintiffs' insistence that the Settlement Agreement include Paragraph 2(c), it is unreasonable to conclude as a matter of contract interpretation that this provision was intended to supercede the more central element of the Agreement providing for "lifetime" insurance coverage. Accordingly, the process of negotiation confirms that the intent of paragraph 2(c) was merely to protect the plaintiffs against the defendant acting arbitrarily in administering the agreement.

Finally, the Plaintiffs would note that contract principles require the Court to construe ambiguity against the party who drafted the contract, <u>Affiliated F. M. Ins. Co. v. Constitution Reinsurance Corp.</u>, 416 Mass. 839, 844-45, 626 N.E.2d 878 (1994), and to prefer interpretations that avoid viewing provisions of a contract as meaningless or counter-intuitive. <u>S.D. Shaw & Sons, Inc. v. Joseph Rugo, Inc.</u>, 343 Mass. 635, 640, 180 N.E.2d 446 (1962). Assuming there is some ambiguity regarding the intent of paragraph 2(c), both principles favor the plaintiff's interpretation of the Agreement. Agreement.

While the defendant acknowledges that "an agreement must be read as a whole," it nevertheless asks this court to ignore unqualified contract provisions requiring the defendant to provide "lifetime" coverage to the plaintiffs. As indicated in the Settlement Agreement reached between the parties, the defendant agreed "to continue to offer Frank Labuz supplemental health insurance coverage **at no cost to him for his lifetime.**"(emphasis added). See Exhibit A, paragraph 2(a). The defendant also agreed to continue to offer the plaintiff Harriet Labuz "supplemental health insurance coverage for her lifetime..."(emphasis added). Significantly, the defendant can not point to any language in the settlement agreement which expressly qualifies this very distinct obligation. This language is unambiguous and unqualified. Furthermore, an examination of the context of the Settlement Agreement as well as the course of negotiations leading up to the settlement reveals that the intent of paragraph 2(c) was not to obviate the defendant's obligation to provide lifetime insurance coverage. The Plaintiffs are entitled to Summary Judgement as a Matter of Law for the defendant's breach of contract.

**B.    REMEDY**

As a result of the defendants' breach of contract, the plaintiffs have incurred and will continue to incur damages amounting to the cost of continuing their Health Insurance and Life Insurance coverage. Frank Labuz indicates in his affidavit that he has incurred $695.05 in insurance premiums as a direct result of the defendant's breach of contact. In addition, because the plaintiffs were unable to obtain coverage from November to February 1, 2004, Ms. Labuz incurred medical expenses that would have been covered in the amount of $246.49. Furthermore, the plaintiffs were unable to afford similar coverage, thus they were forced to enroll in a plan which did not cover prescription medication. The plaintiffs total monthly prescription costs are $1,755.18 per month and therefore request additional damages in the amount of $8775.90. The plaintiffs also request that the defendant be ordered to pay the cost of continued health and life insurance at the same level they enjoyed when their benefits were terminated and to pay Frank Labuz an additional $5,000.00 constituting the face value of his life insurance policy which lapsed as a result of the defendant's breach.

## CONCLUSION

For the forgoing reasons, the defendants are liable to the Plaintiffs for breach of the Settlement Agreement.

Respectfully Submitted,

The Plaintiffs
Frank and Harriet Labuz
By their Attorney,

by: _____
John D. Connor, Esq.
BBO# 629185
101 State Street, Suite 501
Springfield, MA 01103
(413)-827-0777