UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

CIVIL ACTION NO.:04-30036

| | |
|---|---|
| Frank Labuz and Harriet Labuz, <br> Plaintiffs <br> v. <br><br> Cascades Diamond Inc., <br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT**

These facts are verified by the affidavit of Frank Labuz attached hereto as Exhibit G

1. Prior to Mr. Labuz's retirement in 1994 he had a total 15 years of service with Cascades Diamond Inc. and its two predecessors, Diamond International and Diamond Fiber Products. On or about September of 1994, Mr. Labuz was notified by Thomas Reed, the defendant's Human Resources Manager, that his position with the company was being eliminated and that he would be retired effective on or about November 30, 1994. At the time he was 70 years of age.

2. During this meeting, Mr. Reed gave Mr. Labuz a letter dated September 13, 1994 which stated:

   "The following benefits will continue under your retirement status:

   Your wife Harriet, will be placed on an individual medical plan until she turns 65 years of age. You will be placed on a supplemental medical insurance plan to help off set what medicare doesn't pay for and that plan will be paid for by the company. Also your life insurance will continue."

3. After reviewing this letter with Mr. Labuz's wife, Harriet Labuz later that evening, he returned to his employer concerned that the letter did not ensure supplemental health insurance coverage for his wife after she attained sixty-five years of age.

4. The following day, the Mr. Labuz again met with Mr. Thomas Reed and conveyed to him

his concerns regarding supplemental health insurance coverage for Mr. Labuz's wife Harriet Labuz Mr. Reed assured stated hat Mr. Labuz's wife would be covered under a supplemental insurance plan when she reached sixty-five years of age. Mr. Reed acknowledged this fact in writing at the bottom of Mr. Labuz' September 13, 1994 letter.

5. Once again Mr. Reed signed his name to the bottom of the September 13, 1994 letter.

6. On or about September 26, 1994, Mr. Labuz received another letter from Lance Gauthier, the defendant's benefits coordinator. In this letter the defendant assured Mr. Labuz that there would be no cost for Mr. Labuz's supplemental health insurance if he selected "the Bankers life plan." The letter also stated: "Your wife, Harriet, will remain on Blue Cross Blue Shield HMO Blue but as an individual. After discussions with Tom Reed, Harriet's contribution for medical coverage will only be $50.00 per month."

7. In reliance on these representations Mr. Labuz selected Banker Life Plan" as his supplemental insurance carrier.

8. Mr. Labuz's wife Harriet selected the "Kaiser Plan 1" as her primary health insurance carrier. She was required to pay a monthly premium of $27.97.

9. On October 1, 1996, Mr. Labuz's wife received a notice from the defendant that her contribution to the health insurance premiums would increase to $69.93 per month. Mr. Labuz's wife immediately protested the increase in her premiums to Lance Gauthier. She questioned why her premiums were being increased since other retirees and their spouses on the same plan were not incurring a corresponding increase in premiums. During her discussion with Mr. Gauthier, their conversation turned heated. The defendant eventually agreed to offer Mr. Labuz's wife the lower premium contribution rate.

10. On or about October 17, 1997 Mr. Labuz's wife was notified by the defendant that she would no longer be offered medical benefits effective December 1, 1997. The defendant also included a COBRA notice advising Mr. Labuz's wife that she could continue her health insurance coverage for 18 months provided she bore the full cost of the insurance. At the time this notice was received Mr. Labuz's wife had not reached sixty-five years of age.

11. On or about October 17, 1999, Mr. Labuz received a notice from the defendant that he would now be charged a premium for continued supplemental health insurance coverage under the Bankers Life plan.

12. On May 24, 1999, the plaintiffs filed suit in Federal District Court, Docket #99-30103 alleging violations of ERISA as well as breach of contract and misrepresentation.

13. On or about January 5, 2000, the plaintiffs executed a Settlement Agreement and General Release"(hereinafter "settlement agreement"). A true and accurate copy of that settlement agreement and our signatures is attached as exhibit "A" of the Complaint.

14. Under paragraph 2a of the settlement agreement, the defendant agreed "to continue to offer Frank Labuz supplemental health insurance coverage **at no cost to him for his lifetime**."(emphasis added).

15. The settlement agreement further stated at paragraph 2b that the defendant would continue to offer the Mr. Labuz's wife "supplemental health insurance coverage **for her lifetime**..."(emphasis added).

16. During the process of negotiations for settlement of the lawsuit, the plaintiffs were concerned that the settlement agreement should have some way of ensuring that they would be provided with the same or similar benefits as they had enjoyed in the past. The plaintiffs voiced this concern because the employer had unilaterally increased premiums on Mr. Labuz's wife even though others on the same plan received no increase. They had also attempted to terminate their insurance wile all other retirees were not terminated from the same plan. Consequently, the plaintiffs had become distrustful of the defendant's willingness to comply with the terms of the agreement. As a result of this concern, they insisted that paragraph 2(c) be inserted into the settlement agreement. The purpose and intent of paragraph 2(c) was to ensure that the defendant offer the same level of benefits as other similarly situated persons. The plaintiffs believed that this provision would prevent the defendant from offering them a substandard plan in order to technically comply with its obligation to provide lifetime coverage under the agreement and later the settlement agreement. The intent of this provision was not to obviate the defendant's obligation to provide lifetime insurance coverage for the plaintiffs.

17. Once the defendant agreed to the essential terms of the settlement, the plaintiffs agreed to dismiss their claim in Federal District Court and the defendants reinstated life insurance and health insurance coverage for Mr. Labuz's and health insurance for Mr. Labuz's wife.

18. On August 1, 2003, Mr. Labuz received a letter from Mario Lacharite, a representative of Cascades Diamond, Inc., indicating that effective the end of November, 2003, the plaintiffs' health insurance and life insurance benefits would terminate. A true an accurate copy of this letter is attached to the complaint as exhibit "B".

19. On September 11, 2003, at Mr. Labuz's request, attorney John Connor forwarded a letter to Jennifer Moore, Human Resource Manager for Cascades Diamond, Inc., contesting the notice of termination of benefits. A copy of that letter is attached to the complaint as exhibit "C".

20. On October 10, 2003, Mr. Labuz's attorney received a letter from attorney Melissa M. Shea indicating that she represented the defendant and also reaffirming the defendant's notice that the plaintiffs' health insurance and life insurance benefits would be terminated. A true and accurate copy of that letter is attached to the complaint as Exhibit "D".

21. In response to the letter from attorney Shea, Mr. Labuz's attorney protested the termination of our health insurance and life insurance benefits and requested administrative review of the same. Their request for reconsideration was denied by the defendant and therefore the plaintiffs have exhausted their administrative remedies, if any.

22. At the end of November, Mr. Labuz's health insurance and life insurance terminated. In addition, Mr. Labuz's wife's supplemental insurance terminated. Because the full cost of the plan was so expensive, the plaintiffs were unable to continue health insurance coverage under the defendant's plan. Thus from November of 2003 until February 1, 2004, they were without health insurance. During that period of time, Mr. Labuz's wife and I incurred $246.49 in medical expenses which otherwise would have been covered by our health insurance.

23. Effective February 1, 2004, the plaintiffs enrolled in a medicare part B plan called "Blue Cross Blue Shield Bronze". This plan does not have the same level of coverage as the plaintiffs previous health insurance plan. The premiums for this plan are $139.01 per month for Mr. Labuz's and an additional $139.01 per month for Mr. Labuz's wife. This health insurance plan, unlike their previous health insurance plan, does not cover prescription medication. The plaintiffs take 17 medications every month. The cost of these prescriptions is currently $1,755.18 per month. Because of the enormous expense of these prescription medications, the plaintiffs have been forced to cut their prescribed dosages to make the prescriptions last longer. These reduced dosages are against their doctor's orders however the simply do not have the means to pay for each prescription each month. As of June 1, 2004, Mr. Labuz will have incurred $695.05 in health insurance premiums. He will incur an addition premium of $139.01 per month thereafter.

24. Also in November of 2003, the defendant terminated Mr. Labuz's life insurance coverage which was a term life plan with a $5000.00 in coverage. Mr. Labuz's wife Harriet was listed as the beneficiary of this policy. Mr. Labuz has been unable because of financial difficulties to replace this life insurance policy.

Respectfully Submitted,

The Plaintiffs
Frank and Harriet Labuz
By their Attorney,

by: _____
John D. Connor, Esq.
BBO# 629185
101 State Street, Suite 501
Springfield, MA 01103
(413)-827-0777

# EXHIBIT E

*Law Offices of*

# Moriarty and Connor, LLC

**Marshall T. Moriarty**
**John D. Connor***
**Peter M. Murphy***

**William E. Drislane†**
*of counsel*

*Attorneys -At-Law*

101 State Street, Suite 501
Springfield, MA 01103 2070
TELEPHONE (413) 827 0777
FAX (413) 827 8867

* *also admitted in CT*
† *also admitted in VT & NY*

September 27, 1999

Gordon Quinn, Esq.
Sullivan & Hayes
One Monarch Place
Springfield, MA   01144

RE:   Labuz v. Cascades Diamond, Inc.
      CA#:   99-30103-KPN

Dear attorney Quinn:

    I have thoroughly discussed your offer of settlement with my clients and advised them as to the inherent risks of continued litigation. Although they are reluctant to settle for less than their attorney fees in this matter, they have decided, in the interest of putting this matter behind them, to accept your client's settlement offer. So that there will be no misunderstanding regarding the terms of this settlement, I have outlined our understanding of those terms below.

1. Cascades will provide Frank Labuz with supplemental health insurance at no cost to him for his lifetime.

2. Cascades will provide Harriet Labuz with full coverage until she reaches age 65 and supplemental coverage for her life time thereafter.

3. The full cost of Mrs. Labuz's primary health insurance coverage will be paid by Cascades until she attains age 65.

4. Upon reaching the age of 65 and obtaining supplemental insurance coverage from Cascades, Mrs. Labuz's contribution to monthly premiums shall equal the contribution paid by other individuals similarly situated. Cascades agrees to pay the balance of any monthly premiums.

5. Both Harriet and Frank Labuz will be entitled to selected their preferred health insurance plan in the same manner as all other retirees and other persons similarly situated.

6. Cascades will pay Frank Labuz $5696.71 plus $1500 in attorney fees.

7. Cascades will pay Harriet Labuz $2816.37 for Cobra payments made from December of 1997 through the present.

    If these terms are consistent with your understanding of the settlement agreement please confirm.

Sincerely,

John Connor

cc:   Frank and Harriet Labuz

# EXHIBIT F

# SULLIVAN & HAYES

*Attorneys At Law*
ONE MONARCH PLACE - SUITE 1200
SPRINGFIELD, MASSACHUSETTS 01144-1200
(413) 736-4538

Patrick W. McGinley
Of Counsel

Fax: (413) 731-8206
E-mail: shayes6943@aol.com

October 14, 1999

**VIA FACSIMILE**- (413) 827-8867

John Connor, Esq.
Moriarty and Connor, LLC
101 State Street, Suite 501
Springfield, MA 01103-2070

  Re: Frank and Harriet Labuz v. Cascades Diamond, Inc.
    C.A. No.: 99-30103-KPN

Dear Attorney Connor:

  We understand from your correspondence dated September 27, 1999 that we have an agreement as to the essential terms of our settlement proposal dated September 22, 1999.

  We however want to clarify that the amount of $5,696.71 referred to in our letter represents the total amount that would be owed to both Mr. and Mrs. Labuz under our settlement proposal. This amount is apportioned as follows:

    $ 2,880.34 (Frank Labuz's payment since retirement date); plus
    $ 2,816.37 (Harriet Labuz's payment since December 1997)
    $ 5,696.71 (Total past premium costs under proposal)

  Finally, we note that your correspondence dated September 27, 1999 failed to respond to our proposal regarding the need for strict confidentiality and non-admissions provisions to be part of the settlement. As we mentioned in our prior correspondence, we view these provisions as critical. Is there agreement on these points?

John Connor, Esq.              2             October 14, 1999
Moriarty and Connor, LLC

In the meantime, with your approval, we will draft the necessary settlement paperwork. If you have any questions about this correspondence, please call to discuss.

            Very truly yours,

            SULLIVAN & HAYES

            By Gordon D. Quinn, Esq.

GDQ:lss

# EXHIBIT G