UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

CIVIL ACTION NO.:04-30036

Frank Labuz and Harriet Labuz,
    Plaintiffs
v.

Cascades Diamond Inc.,
    Defendant

**AFFIDAVIT OF FRANK LABUZ**

I, Frank Labuz, do depose and say as follows:

1. Prior to my retirement in 1994 I had a total 15 years of service with Cascades Diamond Inc. and its two predecessors, Diamond International and Diamond Fiber Products. On or about September of 1994, the I was notified by Thomas Reed, the defendant's Human Resources Manager, that my position with the company was being eliminated and that I would be retired effective on or about November 30, 1994. At the time I was 70 years of age.

2. During this meeting, Mr. Reed gave me a letter dated September 13, 1994 which stated:

   "The following benefits will continue under your retirement status:

   Your wife Harriet, will be placed on an individual medical plan until she turns 65 years of age. You will be placed on a supplemental medical insurance plan to help off set what medicare doesn't pay for and that plan will be paid for by the company. Also your life insurance will continue."

3. After reviewing this letter with my wife, Harriet Labuz later that evening, I returned to my employer concerned that the letter did not ensure supplemental health insurance coverage for my wife after she attained sixty-five years of age.

4. The following day, the I again met with Mr. Thomas Reed and conveyed to him my concerns regarding supplemental health insurance coverage for my wife Harriet Labuz Mr. Reed assured me that my wife would be covered under a supplemental insurance plan when she reached sixty-five years of age. Mr. Reed acknowledged this fact in writing at the

Page -1-

bottom of Mr. Labuz' September 13, 1994 letter.

5. Once again Mr. Reed signed his name to the bottom of the September 13, 1994 letter.

6. On or about September 26, 1994, I received another letter from Lance Gauthier, the defendant's benefits coordinator. In this letter the defendant assured me that there would be no cost for my supplemental health insurance if I selected "the Bankers life plan." The letter also stated: "Your wife, Harriet, will remain on Blue Cross Blue Shield HMO Blue but as an individual. After discussions with Tom Reed, Harriet's contribution for medical coverage will only be $50.00 per month."

7. In reliance on these representations I selected Banker Life Plan" as my supplemental insurance carrier.

8. My wife Harriet selected the "Kaiser Plan 1" as her primary health insurance carrier. She was required to pay a monthly premium of $27.97.

9. On October 1, 1996, My wife received a notice from the defendant that her contribution to the health insurance premiums would increase to $69.93 per month. My wife immediately protested the increase in her premiums to Lance Gauthier. She questioned why her premiums were being increased since other retirees and their spouses on the same plan were not incurring a corresponding increase in premiums. During her discussion with Mr. Gauthier, their conversation turned heated. The defendant eventually agreed to offer my wife the lower premium contribution rate.

10. On or about October 17, 1997 my wife was notified by the defendant that she would no longer be offered medical benefits effective December 1, 1997. The defendant also included a COBRA notice advising my wife that she could continue her health insurance coverage for 18 months provided she bore the full cost of the insurance. At the time this notice was received my wife had not reached sixty-five years of age.

11. On or about October 17, 1999, I received a notice from the defendant that I would now be charged a premium for continued supplemental health insurance coverage under the Bankers Life plan.

12. On May 24, 1999, My wife and I filed suit in Federal District Court, Docket #99-30103 alleging violations of ERISA as well as breach of contract and misrepresentation.

13. On or about January 5, 2000, my wife and I executed a Settlement Agreement and General Release"(hereinafter "settlement agreement"). A true and accurate copy of that settlement agreement and our signatures is attached as exhibit "A" of the Complaint.

14. Under paragraph 2a of the settlement agreement, the defendant agreed "to continue to offer Frank Labuz supplemental health insurance coverage **at no cost to him for his**

**lifetime.**"(emphasis added).

15. The settlement agreement further stated at paragraph 2b that the defendant would continue to offer the my wife "supplemental health insurance coverage **for her lifetime**..."(emphasis added).

16. During the process of negotiations for settlement of our lawsuit, my wife and I were concerned that the settlement agreement should have some way of ensuring that would be provided with the same or similar benefits as we had enjoyed in the past. We voiced this concern because the employer had unilaterally increased premiums on my wife even though others on the same plan received no increase. They had also attempted to terminate their insurance wile all other retirees were not terminated from the same plan. Consequently, my wife and I had become distrustful of the defendant's willingness to comply with the terms of the agreement. As a result of this concern, my wife and I insisted that paragraph 2(c) be inserted into the settlement agreement. The purpose and intent of paragraph 2(c) was to ensure that the defendant offer the same level of benefits as other similarly situated persons. We believed this would prevent the defendant from offering us a substandard plan in order to technically comply with their obligation to provide lifetime coverage under the agreement and later the settlement agreement. The intent of this provision was not to obviate the defendant's obligation to provide lifetime insurance coverage for my wife and I.

17. Once the defendant agreed to the essential terms of the settlement, my wife and I agreed to dismiss our claim in Federal District Court and the defendants reinstated life insurance and health insurance coverage for myself and health insurance for my wife.

18. On August 1, 2003, I received a letter from Mario Lacharite, a representative of Cascades Diamond, Inc., indicating that effective the end of November, 2003, the our health insurance and life insurance benefits would terminate. A true an accurate copy of this letter is attached to the complaint as exhibit "B".

19. On September 11, 2003, at my request, attorney John Connor forwarded a letter to Jennifer Moore, Human Resource Manager for Cascades Diamond, Inc., contesting the notice of termination of benefits. A copy of that letter is attached to the complaint as exhibit "C".

20. On October 10, 2003, my attorney received a letter from attorney Melissa M. Shea indicating that she represented the defendant and also reaffirming the defendant's notice that our health insurance and life insurance benefits would be terminated. A true and accurate copy of that letter is attached to the complaint as Exhibit "D".

21. In response to the letter from attorney Shea, my attorney protested the termination of our health insurance and life insurance benefits and requested administrative review of the same. Our request for reconsideration was denied by the defendant and therefore we have exhausted our administrative remedies.

22. At the end of November, my health insurance and life insurance terminated. In addition, my wife's supplemental insurance terminated. Because the full cost of the plan was so expensive, my wife and I were unable to continue health insurance coverage under the defendant's plan. Thus from November of 2003 until February 1, 2004, were without health insurance. During that period of time, my wife and I incurred $246.49 in medical expenses which otherwise would have been covered by our health insurance.

23. Effective February 1, 2004, my wife and I enrolled in a medicare part B plan called "Blue Cross Blue Shield Bronze". Unfortunately, this plan does not have the same level of coverage as our previous health insurance plan. The premiums for this plan are $139.01 per month for myself and an additional $139.01 per month for my wife. Unfortunately, this health insurance plan, unlike our previous health insurance plan, does not cover prescription medication. My wife and I take 17 medications every month. The cost of these prescriptions is currently $1,755.18 per month. Because of the enormous expense of these prescription medications, my wife and I have been forced to cut our prescribe dosages to make the prescriptions last longer. These reduced dosages are against our doctors orders however we simply do not have the means to pay for each prescription each month. As of June 1, 2004, I will have incurred $695.05 in health insurance premiums. I will incur an addition premium of $139.01 per month thereafter.

24. Also in November of 2003, the defendant terminated my life insurance coverage which was a term life plan with a $5000.00 in coverage. My wife Harriet Labuz was listed as the beneficiary of this policy. I have been unable because of financial difficulties to replace this life insurance policy.

Signed under the pains and penalties of perjury this 20th day of May, 2004.

_Frank Labuz_
Frank Labuz