UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANK LABUZ and HARRIET LABUZ, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 04-30036-KPN |
| ) | |
| CASCADES DIAMOND, INC., ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT, CASCADES DIAMOND INC.'S, MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CONVERT DEFENDANT'S MOTION TO DISMISS INTO MOTION FOR SUMMARY JUDGEMENT AND REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Now comes the Defendant, Cascades Diamond, Inc. and hereby submits this memorandum of law in support of its Opposition to Plaintiffs' Motion to Convert Defendant's Motion to Dismiss Into a Motion for Summary Judgment and Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss.

*I. DEFENDANT'S MOTION TO DISMISS SHOULD NOT BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT AS IT PRESENTS NO MATTERS OUTSIDE THE PLEADINGS*

Defendant, the moving party in the Motion to Dismiss, objects to Plaintiffs' request to convert its Motion to Dismiss into a Motion for Summary Judgment. As reasons, therefore, the Defendant states that the Motion to Dismiss presents no evidence that is outside the pleadings

and therefore, should not be converted. In addition the Settlement Agreement is not ambiguous and therefore, extrinsic evidence should not be introduced.

### A. No Matters Outside the Pleadings

The Defendant presented no matters that were outside the pleadings. "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to* and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56". FED. R. CIV. P. 12 (b) (emphasis supplied). All matters presented to the court by Defendant in its Motion to Dismiss were part of the pleadings. In fact, the Settlement Agreement, which is the primary matter which the Motion to Dismiss discusses, was attached as Exhibit A to the Complaint and referenced throughout it. Plaintiffs' attempt to characterize the Defendant's reliance on the terms of the Settlement Agreement to suggest that it is requesting the court to consider matters outside the pleadings is circuitous.[1] Although Plaintiffs correctly point out that the decision to convert a motion into one of summary judgment is within the sole discretion of the court, it is the Plaintiffs, and not the moving party, who seek to introduce evidence that is outside the pleadings thereby attempting to convert the Motion to Dismiss into one of Summary Judgment. Since the moving party did not include matters outside the pleadings, Plaintiffs' attempt to do so and convert it to Summary Judgment is inappropriate given the plain language of the Federal Rules. FED. R. CIV. P. 12 (b) provides in relevant part

---

[1] Plaintiffs argue in their opposition to the Motion to Dismiss that "[b]y relying upon the terms of the written contract for their respective positions, the parties are asking the court to consider matters outside the pleadings and to interpret the agreement between the parties." This is not the case.

2

that a motion to dismiss under 12 (b) (6) should be treated as summary judgment "[i]f *on a motion . . .* matters outside the pleadings are presented to . . ." (emphasis added). This has not occurred. For this reason, Plaintiffs' Motion to Convert Defendants Motion to Dismiss to Summary Judgment should not be allowed.

### B.  *Settlement Agreement Not Ambiguous*

Plaintiffs seek to convert Defendant's Motion to Dismiss to one of Summary Judgment for the purposes of introducing extrinsic evidence. Since the Settlement Agreement is clear and unambiguous this is improper. Plaintiffs' Motion to Convert Defendant's Motion to Dismiss to Summary Judgment should also be dismissed, therefore, because it relies on Plaintiffs' attempt to include matters that are extrinsic to the Settlement Agreement.

### 1.  *Legal Standard for Ambiguity*

Whether an ambiguity exists is a matter of law for the court. *Wyner v. North Am. Specialty Ins. Co.*, 78 F. 3d 752, 754 (1st Cir. 1996). A contract term is ambiguous only where its language is "reasonably prone to different interpretations or susceptible to differing, but nonetheless, plausible constructions." *Lanier Prof. Servs., Inc. v. Ricci*, 192 F.3d 1, 4 (1st Cir. 1999). "[A] contract is only ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Bank v. IBM*, 145 F.3d 420 (1st Cir. 1998) (citations omitted).

*2.    Analysis Why Settlement Agreement Not Ambiguous*

"An ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other's." *Wyner v. North Am. Specialty Ins. Co.*, 78 F. 3d at 756. The parties disagree as to the interpretation of the following language in the Settlement Agreement:

> a. "pay to Frank Labuz the gross sum of $2,880.34 to reimburse him for past health insurance premium payments he made since his retirement . . . [and] to continue to offer Frank Labuz supplemental health insurance coverage at no cost to him for his lifetime."
>
> b. "pay Harriet Labuz the gross sum of $2,816.37 to reimburse her for past health insurance premium payments she has made since December 1997 . . . continue to offer Harriet Labuz health insurance coverage at no cost to her until she attains the age of 65 . . . [and that after 65 Cascades would] offer to provide her with supplemental health insurance coverage for her lifetime, *provided that her contribution to monthly premiums toward such supplemental health insurance coverage shall be equivalent to the contributions required of other individuals, similarly situated, who are at the time covered by Cascades supplemental health insurance coverage.*"  See, Settlement Agreement ¶ 2.b. (emphasis supplied).
>
> c. "[b]*oth Harriet and Frank Labuz will be accorded the same choice of specific health insurance plans that are offered to all other Cascades retirees and persons similarly situated.*"

See, Settlement Agreement ¶ 2.a.- c. (emphasis supplied). Although the parties may dispute the interpretation of the above provisions of the Settlement Agreement, the relevant terms in the Settlement Agreement are not inconsistent and are not susceptible to different and plausible constructions. Rather, read as a whole, the provisions of the Settlement Agreement can only have one plausible meaning. Without belaboring this issue, in its Motion to Dismiss Defendant articulated in great detail its reasons why the relevant terms in the Settlement Agreement are not ambiguous and restates them through incorporation and summary herein.

The Plaintiffs were promised health benefits at the same level as similarly situated individuals and retirees. Because the Company ceased operations and similarly situated individuals and retirees ceased receiving benefits, it is consistent with the terms of the Settlement Agreement that the Plaintiffs stopped receiving benefits as well and the terms of the Settlement Agreement continue in effect. Nothing in the negotiated Settlement Agreement precluded the Defendant's action.

Moreover, there is no other consistent way to read the Settlement Agreement provisions that state the Plaintiffs will receive the same choice of benefits as similarly situated individuals and that they receive lifetime benefits. The Defendant's interpretation of the Settlement Agreement reconciles these two provisions allowing the Plaintiffs to receive lifetime benefits so long as retirees and similarly situated persons receive benefits as well. The Plaintiffs' reading, however, negates entirely the provision which states that they will receive the same benefits as similarly situated individuals and retirees. See, e.g. *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179 (1st Cir. 1995) ("Accepted canons of construction forbid the balkanization of contracts for interpretive purposes" ); see also *Restatement (Second) of Contracts* § 202 cmt. d (1981) (cited as authority by *Smart* and explaining that "[w]here the whole can be read to give significance to each part, that reading is preferred"). A contract should be interpreted as a whole, so that each of its provisions has operative effect. *See Bank One Texas, N.A. v. A.J. Warehouse, Inc.*, 968 F.2d 94, 97-98 (1st Cir. 1992); *J.A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789 (Mass. 1986). Under Massachusetts law, "where the wording of the contract is unambiguous, the contract must be enforced according to its terms." *Liberty Mutual Ins. Co. v. Gibbs*, 773 F. 2d

15, 17 (1st Cir. 1985). Therefore, when the phrase "lifetime benefits" is read in the full context of the document, the Settlement Agreement is subject to only one reasonable interpretation and is, therefore, not ambiguous. As a result, the resort to extrinsic evidence is not necessary and would be improper.

As described in greater detail above, the Settlement Agreement by its terms provides the Plaintiffs, albeit for their lifetime, with the same health benefits as similarly situated retirees. The Plaintiffs have been accorded the benefit of their bargain and should not be entitled to greater rights or benefits than other Defendant employees or retirees simply because they neglected to provide for a contingency should something unforeseen, such as a plant closing, occur. The Plaintiffs were not pro se but represented by counsel during negotiations. Plaintiffs' counsel was surely aware at the time the Settlement Agreement was negotiated and executed that businesses are subject to closings and other unforeseen events where lifetime benefits may be precluded. By providing that the plaintiffs are entitled to the same benefits as other retirees and others similarly situated, the Defendant contends that the contingency of a plant closing was provided for. This court has repeatedly indicated that "it is not our role to accomplish by judicial fiat what a party neglected to achieve contractually." *Northern Heel Corp. v. Compo Indus., Inc.*, 851 F.2d 456, 466 (1st Cir. 1988); *RCI Northeast Services Division*, 822 F.2d at 204. ("We decline to rewrite the agreement between the parties to include a representation which they were mutually content to let slide in the course of their negotiations."); *New England Structures, Inc. v. Loranger*, 354 Mass. 62, 234 N.E.2d 888, 893 (1968) (refusing to imply a contract term in circumstances where it "would have been natural for the parties to have provided expressly [for the term] if that had been the[ir] purpose").

Given that the Settlement Agreement is not ambiguous, the resort to extrinsic evidence would be inappropriate and contrary to law. As a result, Plaintiffs' Motion to Convert Defendant's Motion to Dismiss to one of Summary Judgment should be denied.

### C. Summary Judgment Premature

This Court has construed conversion to Summary Judgment in the context of a Motion for Judgment on the pleadings. These similar principles apply in the context of conversion of a Motion to Dismiss to one of Summary Judgment:

> Conversion of a motion for judgment on the pleadings into one for summary judgment should only occur after the parties have been offered a "reasonable opportunity" to present pertinent summary judgment materials. FED. R. CIV. P. 12(c). Whether the parties had an opportunity to respond necessarily turns on the way in which the particular case under consideration has unfolded. Thus, we have disfavored conversion when (1) the motion comes quickly after the complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur.

*Rubert-Torres ex rel. Cintron-Rupert v. Hospital San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000) (internal citations omitted). In this matter, Plaintiffs' Motion for Summary Judgment "comes quickly after the complaint was filed". Moreover, no discovery has yet been conducted. Since several individuals who were part of the Settlement Agreement negotiations and review are no longer employed by Defendant, Defendant would require additional time to submit evidence to counter any extrinsic evidence that the Plaintiffs provide. At this time, no discovery has been conducted regarding this case. Summary Judgment is usually disfavored under these circumstances.

## CONCLUSION

For all of the above reasons, the Plaintiffs' Motion to Convert Defendant's Motion to Dismiss to Summary Judgment should be denied and Defendant's Motion to Dismiss should be allowed.

Although Defendant vigorously denies that its Motion to Dismiss should be converted to one of Summary Judgment, should this Honorable Court decide to exercise its discretion and determine otherwise, Defendant respectfully requests notice and an opportunity to respond in opposition thereof. Since several individuals who were part of the Settlement Agreement negotiations are no longer employed by the Defendant and/or reside outside the Commonwealth of Massachusetts, Defendant requests time and opportunity to respond should the Court be inclined to grant Plaintiffs' Motion to Convert.

Respectfully Submitted,

THE DEFENDANT
Cascades Diamond, Inc.
By its attorneys,
Sullivan, Hayes & Quinn,

_/s/ Melissa M. Shea_
Melissa M. Shea, Esq.
BBO# 564693
SULLIVAN, HAYES & QUINN
One Monarch Place – Suite 1200
Springfield, MA 01144-1200
Tel: (413) 736-4538
Fax: (413) 731-8206

June 15, 2004

## CERTIFICATE OF SERVICE

  I hereby certify that a true copy of the Defendant's Motion and Memorandum of Law in Opposition to Plaintiffs' Motion to Convert Defendant's Motion to Dismiss into Motion for Summary Judgment and Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss were served upon the attorney of record for each party by mailing a copy first class mail, postage prepaid, on June 15, 2004 to:

John D. Connor, Esq.
Moriarty and Connor, LLC
101 State Street, Suite 501
Springfield, MA  01103

                 /s/ Melissa M. Shea
                 Melissa M. Shea