UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FRANK LABUZ and HARRIET LABUZ,   )
                Plaintiffs    )
                                  )
                                  )
    v.                            )   Civil Action No. 04-30036-KPN
                                  )
                                  )
CASCADES DIAMONDS, INC.,       )
                Defendant   )

MEMORANDUM AND ORDER WITH REGARD TO
DEFENDANT'S MOTION TO DISMISS (Document No. 4) and
PLAINTIFFS' MOTION TO CONVERT DEFENDANT'S MOTION
INTO A MOTION FOR SUMMARY JUDGMENT (Document No. 7)
August 5, 2004

NEIMAN, U.S.M.J.

Pursuant to FED. R. CIV. P. 12(b)(6), Cascades Diamond, Inc. ("Defendant") has moved to dismiss Frank and Harriet Labuz's ("Plaintiffs'") complaint for failing to state a claim upon which relief can be granted. In response, Plaintiffs have moved to convert Defendant's motion to dismiss into one for summary judgment. For the following reasons, both motions will be denied.

I. BACKGROUND

The following facts come directly from Plaintiffs' complaint and, along with any reasonable inferences drawn therefrom, are accepted as true for purposes of the present motions. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994). Prior to September of 1994, Frank Labuz worked for Defendant. That month, however, Defendant notified him that his position was being eliminated and that he would need to retire. Mr. Labuz

was 70 years old at the time.

Following some discussions, Defendant agreed to provide Mr. Labuz with supplemental health insurance and life insurance. In addition, the parties agreed that Mrs. Labuz would receive full medical insurance, for which she would be required to pay a premium, until she turned 65; thereafter, Defendant would place Mrs. Labuz on a plan similar to her husband's.

At some later point, Mrs. Labuz had some heated discussions with Defendant about the amount of her premium. Although the issue subsequently appeared to be resolved, Defendant notified Mrs. Labuz on October 17, 1997, that it would soon discontinue her insurance. Mrs. Labuz was younger than 65 at the time. Defendant also notified Mr. Labuz of an apparently unanticipated premium he would have to pay on his plan. Plaintiffs filed suit in this court on May 24, 1999. The parties reached a settlement the following January.

The written Settlement Agreement, dated January 5, 2000, provides that Defendant will "continue to offer" Frank Labuz "supplemental health insurance coverage at no cost to him for his lifetime" as well as "offer to provide" Mrs. Labuz "supplemental health insurance for her lifetime, <u>provided</u>, that her contribution to monthly premiums toward such supplemental heath insurance coverage shall be equivalent to the contributions required of other individuals, similarly situated, who are at the time covered by Cascades supplemental health insurance." (Settlement Agreement ¶¶ 2(a)-(b) (emphasis in original).) The Settlement Agreement also states that Plaintiffs "will be accorded the same choice of specific health insurance plans that

are offered to all other Cascades retirees and persons similarly situated." (*Id.* at ¶ 2(c).)  In exchange for this coverage, Plaintiffs released Defendant from all claims arising prior to the date of the agreement.

On August 1, 2003, Mr. Labuz received a letter from Defendant notifying him that it would "cease to operate" and that, as a result, all retirees' health plans would be discontinued.  Plaintiffs' counsel thereafter reminded Defendant of the Settlement Agreement.  Defendant responded by reiterating its position that since all retirees' plans were being discontinued, Plaintiffs were being treated the same as "other retirees and individuals similarly situated."  Plaintiffs then filed the instant action.

Attached to Plaintiffs' complaint are three documents (1) the Settlement Agreement, (2) Plaintiffs' counsel's letter of September 11, 2003, protesting the discontinuance of their health plans, and (3) Defendant's letter in response dated October 10, 2003.  The complaint sets forth four counts.  Count I alleges wrongful termination of vested welfare benefits under the Employee Retirement Income Security Act ("ERISA"), specifically, 29 U.S.C. § 1132(a)(1)(B); Count II alleges breach of fiduciary duty in violation of ERISA, specifically, 29 U.S.C. § 1132(a)(3); Count III alleges breach of contract; and Count IV alleges negligent misrepresentation.  As indicated, presently before the court is Defendant's motion to dismiss and Plaintiffs' motion to convert that dismissal motion into one for summary judgment.

## II. DISCUSSION

In its motion, Defendant argues that the terms of the Settlement Agreement are unambiguous and that the "lifetime" benefits granted to Plaintiffs were modified by

paragraph 2(c), which states that Plaintiffs would be offered the same choice of health insurance plans as retirees and individuals similarly situated.  Because all such plans were discontinued, Defendant argues, Plaintiffs' plans were rightfully terminated.

For their part, Plaintiffs claim as well that the Settlement Agreement is unambiguous but in a dramatically different way, i.e., that they were promised unqualified lifetime benefits.  Plaintiffs also seek to convert Defendant's motion to dismiss into one for summary judgment.  The court will first address Plaintiffs' motion to convert.

A. Plaintiffs' Motion to Convert

In support of their motion to convert, Plaintiffs assert that additional material beyond what is contained in the complaint is necessary to address the issues raised in Defendant's motion to dismiss.  In response, Defendant argues that conversion is appropriate only when the parties have been given "reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."  FED. R. CIV. P. 12(b).  Defendant maintains that this is not the situation at hand.  In fact, Defendant argues, courts have disfavored conversion when, as here, "(1) the motion to dismiss comes quickly after the complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur."  *Rubert-Torres ex rel. Cintron-Rupert v. Hospital San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000).  Accordingly, Defendant asserts that Plaintiffs' motion is premature.

The court agrees with Defendant.  First, the motion to convert was filed only

4

three months after Plaintiffs commenced suit. Second, no discovery has been conducted and Defendant is in no way prepared to go forward on a motion for summary judgment, a motion which may well necessitate yet other documents and at least some discovery. To be sure, as described, Defendant believes that the Settlement Agreement is unambiguous on its face and that, without any further discovery, dismissal is warranted. As explained below, however, the court finds, at present, the Settlement Agreement ambiguous. Accordingly, Defendant should be given the opportunity to investigate the factual underpinnings of the agreement further before deciding whether or not to move for summary judgment. In the meantime, the court will not foist on Defendant the obligation to seek summary judgment (in lieu of dismissal) and will, therefore, deny Plaintiffs' motion to convert.

B. <u>Defendant's Motion to Dismiss</u>

The court believes that the Settlement Agreement is ambiguous and, thus, will also deny Defendant's motion to dismiss. To be sure, both parties assert that the terms of the agreement can be construed unambiguously, albeit in drastically opposite ways. *See Foisy v. Royal Maccabees Life Ins. Co.*, 356 F.3d 141, 147 (1st Cir. 2004) ("a mere controversy over interpretation is not, by itself, enough to create ambiguity"). Still, there appear to be a number of ambiguities in the agreement which make its interpretation and, hence, its application difficult at this time.

Most importantly, there is a fundamental tension between the "lifetime" benefits to be provided Plaintiffs, as set forth in paragraphs 2(a) and (b), and the provision in paragraph 2(c) which accords Plaintiffs the same choice of health insurance plans

5

offered to all Defendant's retirees, a choice that, evidently, could no longer be exercised once Defendant ceased operations and terminated the insurance provided other retirees. There also appears to be some uncertainty as to whether or not, in fact, there are any other retirees to whom Defendant still offers health insurance.[1]

In short, it is presently impossible for the court to interpret the Settlement Agreement in the manner Defendant suggests. Similarly, the court cannot yet construe the ambiguous contractual phrases in Plaintiffs' favor. Thus, it may well be necessary for a factfinder to resolve the ambiguities based on a fuller record. *See Foisy*, 356 F.3d at 148 ("If, upon application of pertinent rules of construction, the district court makes a threshold determination of ambiguity, and thus also finds that extrinsic evidence is necessary to resolve the dispute, then a question of fact arises to be resolved by the [factfinder].") (citations and internal quotation marks omitted). At the very least, Defendant's motion to dismiss will be denied.

### III. CONCLUSION

For the reasons stated, the court hereby DENIES both Defendant's motion to dismiss and Plaintiffs' motion to convert. The clerk shall establish a date for an initial scheduling conference.

IT IS SO ORDERED.

---

[1] Other related ambiguities appear in the Settlement Agreement. For example, paragraphs 2(a) and 2(b) are somewhat inconsistent; paragraph 2(a) states that Defendant agrees to "continue to offer" supplemental health coverage to Frank Labuz, whereas paragraph 2(b) provides that Defendant "will offer to provide" Mrs. Labuz supplemental health coverage. In addition, the phrase "retirees and persons similarly situated" is vague; although Defendant suggests that this phrase refers to retirees' spouses, Plaintiffs assert that the phrase may also refer to current employees.

DATED: August 5, 2004

                                                   /s/ Kenneth P. Neiman  
                                                KENNETH P. NEIMAN  
                                                U.S. Magistrate Judge